UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

b

| | |
|---|---|
| MANUEL DURAN ORTEGA | CIVIL ACTION 1:18-CV-00508 |
| VERSUS | JUDGE DRELL |
| U.S. DEPT. OF HOMELAND SECURITY, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Petitioner Ortega filed a habeas petition pursuant to 28 U.S.C. § 2243. Because Ortega is properly detained pursuant to a 2007 removal order, his habeas petition should be denied.

I.   Background

Petitioner Manuel Duran Ortega ("Ortega") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2243 (Doc. 1). Ortega has been in the custody of the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE") since April 3, 2018.

Ortega is a native and citizen of El Salvador (Doc. 11-1). Ortega entered the United States illegally on about June 28, 2006 (Doc. 11-1). Ortega was placed in removal proceedings on about June 29, 2006 through issuance of a Notice to Appear, and was released on his own recognizance (Doc. 11-1). Ortega was issued a Notice of Hearing in August 2006, which informed him of his hearing on January 31, 2007. Ortega failed to appear at his hearing, was found inadmissible, and was ordered

removed *in absentia* (Docs. 11-1, 11-2). Ortega was listed as an ICE fugitive (Doc. 11-2).

On April 3, 2018, Ortega was arrested in Tennessee for disorderly conduct and obstructing a highway during a protest (Docs. 11-1, 11-2). ICE issued a detainer for Ortega on the same day, April 3, 2018. ICE issued a warrant for Ortega on April 5, 2018, based on the final order of removal (Doc. 11-1, 11-2). On April 5, 2018, Ortega was transferred to ICE custody, the Tennessee charges were dismissed (Doc. 11-1), and Ortega was transported to the LaSalle Detention Center in Jena, Louisiana (Docs. 11-1, 11-2).

Ortega filed a Motion to Reopen the *In Absentia* Order on April 9, 2018, and that motion was denied by an immigration judge on April 24, 2018 (Doc. 11-1). On April 13, 2018, Ortega filed this habeas petition (Doc. 1). On May 1, 2018, Ortega appealed the denial of his motion to reopen and filed a motion for emergency stay of removal with the Board of Immigration Appeals ("BIA") (Doc. 11-1). The BIA granted a stay of removal on May 29, 2018 pending resolution of his appeal of a denial of his motion to reopen his *in absentia* removal proceedings and order (Doc. 12).

In his habeas petition, Ortega complains: (1) his arrest by the Memphis Police Department, the denial of bond by Shelby County Correctional Officers ("SCSO"), the SCSO's action in "voluntarily turning him over to ICE officers," and the ICE officers' action in "swiftly" transferring him from Tennessee to Louisiana, were all done in retaliation for his exercise of his First Amendment right to free speech, through critical reporting on DHS, ICE, and local law enforcement activities; (2) Ortega's

arrest, detention, and transfer to Louisiana were done to "target, punish, and silence his voice as a journalist," violating his First Amendment right to "freedom of the press;" (3) he was arrested by the Memphis Police Department officers without a warrant and without probable cause in violation of the Fourth Amendment; (4) he was unlawfully detained in the Shelby County jail for two days pursuant to an unlawful arrest, even after bond was posted and after the state charges were dismissed, in violation of the Fourteenth Amendment; and (5) he is unlawfully detained by DHS, in violation of the Fifth Amendment, because his detention stems from his unlawful arrest and detention by the MPD and the SCSO officials. Ortega asks for release, a declaratory judgment that his constitutional rights were violated, and an award of costs and attorney's fees.

Respondents filed a Response (Docs. 11, 18), to which Ortega replied (Docs. 12, 16).

II. <u>Law and Analysis</u>

    A. <u>The Real ID Act of 2005 and Jurisdiction.</u>

On May 11, 2005, the Real ID Act of 2005 was enacted as part of the Emergency Supplemental Appropriations Act for Defense, The Global War on Terror, and Tsunami Relief, 2005, P.L. 109-13, 2005 HR 1268. The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, 8 U.S.C. § 1252(a)(5), as added by § 106(a)(1)(B) of the Real ID Act, Pub. L. 109-13, and further directs that habeas cases "challenging a final administrative order of removal" be transferred to the courts of appeals to be treated as petitions for judicial review, Real ID Act, §

3

106(c). Where an action has been improvidently filed in a court lacking subject matter jurisdiction, want of jurisdiction may be cured, in the interest of justice, by transfer of the action to the court in which the action could have been brought. See 28 U.S.C. § 1631; Berrum-Garcia v. Comfort, 390 F.3d 1158 (10th Cir. 2004).[1]

However, as indicated in the legislative history of the Real ID Act, those provisions were not intended to "preclude habeas review over challenges to detention that are independent of challenges to removal orders." See Hernandez v. Gonzales, 424 F.3d 42, 42-43 (1st Cir. 2005) (citing H.R. Cong. Rep. No. 109-72, 2873 (May 3, 2005)).

Ortega clarified in his reply brief (Doc. 12) that he challenging only his detention and not his removal order.

### B. Ortega's claims of violation of his First Amendment right to free speech, freedom of the press, and retaliation do not state claims cognizable in habeas.

First, it is noted that Ortega is no longer in the custody of either the MPD or the SCSO. The MPD and the SCSO are not (and cannot be) respondents in Ortega's habeas action. Any claims Ortega has against the MPD and the SCSO must be brought pursuant to 28 U.S.C. § 1983 or state law in a separate action in Tennessee.

---

[1] Some district courts have held that transfer is proper pursuant to the Real ID Act *only if* the case was pending when the Real ID Act was passed on May 11, 2005. See Nnaguihe v. Bureau of Immigration and Customs Enforcement, 2005 WL 2545284 (N.D. Tex. 2005) (citing 8 U.S.C. § 1252, Historical and Statutory Notes, Transfer of Cases). However, other courts have held that habeas cases challenging removal orders may be transferred to the appropriate court of appeals pursuant to 28 U.S.C. § 1631. See Solis-de Patino v. Pitts, 823 F. Supp. 2d 457, 464 (W.D. Tex. 2011) (citing Bentley v. Gonzales, 194 Fed. Appx. 200, *1 (5th Cir. 2006); see also Vargas v. United States Dept. of Homeland Security, 2017 WL 962420 (W.D. La 2017).

Therefore, to the extent Ortega is alleging claims against the MPD and the SCSO, those claims are not properly raised in this habeas action.

Ortega also alleges ICE/DHS retaliated against him by detaining him for removal because he criticized them in his work as a journalist. Ortega is actually arguing that ICE did not have probable cause to arrest and detain him.[2]

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. See Allen v. Cisneros, 815 F.3d 239, 244–45 (5th Cir. 2016) (citing Hartman v. Moore, 547 U.S. 250, 256 (2006) (in a First Amendment claim of retaliatory arrest or detention, want of probable cause to support the underlying criminal charge must be alleged and proven). A retaliation claim is only applicable when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences. See id. As a result, even where a petitioner believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, the objectives of law enforcement take primacy over the petitioner's right to avoid retaliation. See Allen, 815 F.3d at 244–45.

In 2007, Ortega failed to appear at his removal hearing, was found inadmissible, and was ordered removed *in absentia* (Docs. 11-1, 11-2). Because Ortega absconded, he was listed as an ICE fugitive (Doc. 11-2). Therefore, when ICE

---

[2] First Amendment retaliation claims are brought pursuant to 42 U.S. § 1983 or Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). First Amendment retaliation is not a ground for release from detention in a habeas petition. See Marshall v. United States, 2010 WL 743791, *16 (W.D. Tex. 2010).

5

took custody of Ortega from the SCSO, it was doing to pursuant to Ortega's removal order and fugitive status. ICE did not have Ortega arrested and detained in retaliation for his statements in the press. ICE had independent probable cause to arrest Ortega that was unrelated to the MPD's arrest of Ortega. Ortega cannot show that, but for his critical reporting on immigration matters, he would not have been arrested and detained by ICE.

For the same reasons, the detention of Ortega by ICE is not a retaliatory attempt to interfere with freedom of the press. ICE is simply enforcing the 2007 removal order.

Therefore, Ortega's habeas claims that he was arrested and detained by ICE in retaliation for his work as a journalist and in violation of the First Amendment should be dismissed.

### C. Ortega is lawfully detained pursuant to his 2007 removal order.

Ortega also argues he was arrested by the Memphis Police Department ("MPD") officers without a warrant and without probable in violation of the Fourth Amendment. Ortega contends he was then unlawfully detained in the Shelby County Jail for two days pursuant to the unlawful arrest, even after bond was posted and after the state charges were dismissed, in violation of the Fourteenth Amendment. Ortega claims he has been unlawfully detained by DHS, in violation of the Fifth Amendment, because his detention stems from his unlawful arrest and detention by the MPD and the SCSO officials.

First, the "fruit of the poisonous tree" doctrine argued here by Ortega is an evidentiary rule through which evidence may be excluded, and does not apply to obtain a defendant's release due solely to an illegal arrest. There can be no valid claim that a defendant is immune from prosecution because his person was the fruit of an illegal arrest. See New York v. Harris, 495 U.S. 14, 18 (1990)) (citing United States v Crews, 445 U.S. 463, 474 (1980) (an illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction)).

Moreover, the issue of whether the MPD had probable cause to arrest and detain Ortega on the Tennessee charges is moot.[3] Ortega is no longer detained by the MPD or the Shelby County Sheriff, and the Tennessee charges have been dismissed. The Sheriff properly detained Ortega pursuant to the ICE detainer, 8 C.F.R. § 287.7, until the ICE officials too custody of him.

Ortega's argument, that he would not have been detained by ICE but for the MPD's "illegal" arrest, is meritless. It is irrelevant to this proceeding whether the MPD had probable cause to arrest Ortega on the original Tennessee charges.[4] The MPD and SCSO had probable cause to detain Ortega once they learned Ortega was an ICE fugitive, and maintained custody over him pursuant to the ICE detainer. ICE

---

[3] The SCSO continued to detain Ortega pursuant to the ICE detainer, because he was an ICE fugitive. Probable cause to believe Ortega had committed a crime was not required because there was a detainer. See City of El Cenizo, Texas v. Texas, 890 F.3d 164, 188 (5th Cir. 2018); see also Weisler v. Jefferson Parish Sheriff's Office, 2018 WL 3031437, *2 (5th Cir. 2018). Under the Collective-Knowledge Doctrine, an "ICE officer's knowledge may be imputed to local officials even when those officials are unaware of the specific facts that establish probable cause of removability." See City of El Cenizo, Texas, 890 F.3d at 187 (citing United States v. Zuniga, 860 F.3d 276, 283 (5th Cir. 2017).
[4] If the MPD did not have probable cause to arrest Ortega, or did so with a retaliatory motive, Ortega can file an action against them pursuant to § 1983 or Bivens.

7

has lawful custody of Ortega now pursuant to his removal order. An absconder risks being caught if investigated, arrested, or detained by some other law enforcement agency. Ortega's detention by DHS/ICE is lawful and does not violate the Fifth Amendment.

Ortega also argues that his detention is unlawful because ICE did not issue a detainer for him until after his unlawful arrest. The detainer was a request by ICE to the MPD and SCSO to hold Ortega until ICE officials could arrive to take custody of him. The officers had a statutory duty, pursuant to 8 C.F.R. § 287.7, to comply with the detainer. The actual basis for Ortega's detention was the 2007 order for Ortega's removal. Moreover, as a practical matter, detainers must always be issued after a defendant has been arrested or detained by another law enforcement agency.

Ortega also contends the removal period from the 2007 removal order has run. This argument is meritless. The removal period is suspended when "the alien… acts to prevent the alien's removal subject to an order of removal." See 8 U.S.C. § 1231(1)(C).

Ortega complains that ICE transferred him to its detention facility in Jena, Louisiana. It is within the Attorney General's discretion to place Ortega in a detention facility of his choosing. See 8 U.S.C. § 1232(g)(1). A district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities. See Van Dinh v. Reno, 197 F.3d 427, 433 (10th Cir. 1999).

Finally, Ortega cites the Fourteenth Amendment and Zadvydas v. Davis, 533 U.S. 678, 690 (2001), to argue that he should be removed promptly or released

8

because he is not lawfully detained by ICE. Zadvydas applies to the reasonableness of the length of pre-removal detention. Although ICE has 90 days to remove an alien after he is ordered removed, 8 U.S.C. § 1231(a)(1)(A), the Supreme Court has held that § 1231 permits the detention of removable aliens beyond 90 days, for a period reasonably necessary to bring about that alien's removal from the United States. See Zadvydas, 533 U.S. at 689. Pursuant to Zadvydas, detention for up to six months after the removal order becomes final is "presumptively reasonable." See Zadvydas, 533 U.S. at 688. The six-month presumption does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701. Since Ortega has not yet been detained for six months, his petition for release pending removal, pursuant to Zadvydas, is premature.

Ortega also complains the SCSO did not permit him to obtain release on bond. However, the detainer operated to preclude release for up to 48 hours. See 8 C.F.R. § 287.7. The SCSO had a non-discretionary, statutory duty to maintain custody of Ortega for up to 48 hours, until ICE could assume custody of him.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Ortega's § 2243 habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report

and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases (and other habeas cases pursuant to see Rule 1(b)) in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability**

10

should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS ORDERED AND SIGNED in Chambers at Alexandria, Louisiana on this  6th   day of July, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge